UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

v.                                                                              Case No. 8:18-cr-326-T-60TGW

ROBERT DAYON DUMAS,

    Defendant.
_____/

**ORDER DENYING "DEFENDANT'S MOTION TO SUPPRESS EVIDENCE"**

    This matter is before the Court on "Defendant's Motion to Suppress Evidence," filed by counsel on February 21, 2020. (Doc. 43). On March 6, 2020, the United States of America filed a response in opposition to the motion. (Doc. 49). The Court held a suppression hearing on July 27, 2020. (Docs. 71; 72). After the hearing, the parties submitted written closing arguments the last one having been received on September 28, 2020. (Docs. 77; 79). After reviewing the motion, response, testimony, evidence, closing arguments, court file, and the record, the Court finds as follows:

## Background

    From February 8, 2018, until February 13, 2018, an unidentified man committed a series of five violent, armed robberies in Wesley Chapel, Florida. During these robberies, the man held victims at gunpoint, and he discharged his weapon on at least one occasion. These robberies were investigated by the Pasco County Sheriff's Office "STAR Team." Corporal Andrew Denbo was a member of the team and involved in the investigations.

On March 11, 2018, Corporal Denbo, while coming out of his own neighborhood, conducted a traffic stop after he observed Defendant, as indicated on radar, traveling at 75 m.p.h.  According to Corporal Denbo, during the traffic stop, he noticed the odor of marijuana emanating from the vehicle.  Corporal Denbo ordered Defendant out of the vehicle.  After Defendant was ordered out of the vehicle, Defendant advised Corporal Denbo that there was a firearm in the car.  As Corporal Denbo went to secure the firearm, he observed pieces of marijuana embedded in the floor and seat area of the vehicle, along with a marijuana cigarette and digital scale.  Corporal Denbo also observed items that he believed to be related to the robbery spree that he was investigating, including a firearm, a black mask, and shoes.

Corporal Denbo read Defendant his *Miranda* rights from an agency-issued card.  This interaction was captured on Corporal Denbo's body camera.  Defendant agreed to waive his rights and answered some questions.  Later, he signed a written document evidencing his waiver of *Miranda* rights.[1]  In subsequent interviews, Defendant admitted to being involved in all five robberies.

In his motion, Defendant does not challenge the validity of the traffic stop.  Instead, Defendant argues that there was no probable cause to support the warrantless search of his vehicle.  Defendant contends that because the search was illegal, all evidence derived from the search must be suppressed.

---

[1] The Court notes that Defendant signed a box on a multipurpose form that included a statement outlining his *Miranda* rights.  Although did not sign the "waiver" box, it is clear from the signature on the form that he was aware of and waived his *Miranda* rights.

## Analysis

### *Search of Automobile*

"The Fourth Amendment protects individuals from unreasonable search and seizure." *United States v. Holt*, 777 F.3d 1234, 1256 (11th Cir. 2015); *see* U.S. Const. amend. IV. "A warrantless search of an automobile is constitutional if . . . there is probable cause to believe that it contains contraband or evidence of a crime." *United States v. Smith*, 596 F. App'x 804, 807 (11th Cir. 2015). Probable cause is based on the totality of the circumstances and must be viewed from the standpoint of an objectively reasonable police officer. *United States v. Roy*, 869 F.2d 1427, 1433 (11th Cir. 1989). The law is well-settled that an officer's detection of the odor of marijuana coming from a vehicle provides the officer with probable cause to search the vehicle. *See, e.g., United States v. Johnson*, 445 F. App'x 311, 313 (11th Cir. 2011); *Smith*, 596 F. App'x at 807; *United States v. Tobin*, 923 F.2d 1506, 1512 (11th Cir. 1991) (*en banc*).

Upon review, the Court finds that suppression is not warranted because Corporal Denbo had probable cause to search the vehicle based on the odor of marijuana emanating from the vehicle. At the suppression hearing, the only witness who testified as to the encounter was Corporal Denbo. The Court initially finds Corporal Denbo's testimony to be credible. During his lengthy testimony, Corporal Denbo was professional, calm, and courteous. *See United States v. Sims*, No. 9:19-cr-80106, 2019 WL 7879878, at *5 (S.D. Fla. Dec. 20, 2019) (finding testimony of officer credible in part because his demeanor was "honest, professional, and courteous."). His testimony was largely internally consistent and consistent

with what was eventually found in the vehicle. *See United States v. Rembert*, No. 1:17-cr-316-MHC-AJB, 2018 WL 7283630, at *11 (N.D. Ga. Dec. 6, 2018) (finding officer's testimony that he detected the odor of marijuana credible in part because the search of the vehicle uncovered unburned marijuana). Corporal Denbo testified about his extensive training and experience with marijuana in his law enforcement career, which supports his credibility with respect to identifying the odor of marijuana. *See United States v. Clark*, 605 F. App'x 892, 895 (11th Cir. 2015). Although there was no other officer present at the time of the traffic stop to corroborate Corporal Denbo's testimony that he detected the odor of marijuana, this fact neither defeats nor minimizes his credibility. The Court notes that Defendant did not present any testimony or evidence to contradict Corporal Denbo's testimony.

According to Corporal Denbo's credible testimony, he detected the odor of marijuana emanating from the vehicle. He therefore had a particularized and objective basis for believing that the vehicle contained marijuana. *See United States v. Green*, No. 3:20-cr-18/MCR, 2020 WL 4059721, at *6 (N.D. Fla. July 20, 2020). Considering the totality of the circumstances, the Court concludes that Corporal Denbo possessed probable cause to support the search of the vehicle.

***Seizure of Firearm and Personal Belongings***

In his motion, Defendant argues that even if the Court were to find that the vehicle search was constitutional, the seizure of items found during the search could only extend to items related to crimes for which there was probable cause, so items such as the clothing, personal items, a firearm, and Nike sneakers would still

require suppression because they were unrelated to the offense of possession of marijuana.

As previously noted, Corporal Denbo had probable cause to search the vehicle based on his detection of the odor of marijuana. When he searched the vehicle, he found marijuana and marijuana paraphernalia, along with items that Corporal Denbo believed linked Defendant to a string of recent armed robberies. Corporal Denbo's belief that those items were linked to a string of recent armed robberies was not mere speculation. As it turns out, Corporal Denbo had personally investigated some of those robberies so he had particularized familiarity with the circumstances of those crimes. Even if the items were not specifically connected to the initial charge of marijuana possession, there is no basis to suppress the items because they were found in plain view during a lawful search of the vehicle. *See, e.g., Coolidge v. New Hampshire*, 403 U.S. 443, 466 (1971) (explaining that the plain view doctrine permits the warrantless seizure of evidence when an officer inadvertently comes across a piece of evidence incriminating the accused); *Harris v. United States*, 390 U.S. 234, 236 (1968) ("It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence.").

*Arrest*

Defendant contends that his arrest was not supported by probable cause. Corporal Denbo arrested Defendant for possession of marijuana. The arrest was based on Corporal Denbo's detection of the odor of marijuana, observation of marijuana in the vehicle, and Defendant's statements admitting that he used

marijuana. Based on these facts, established by Corporal Denbo's credible testimony, the Court finds that there was sufficient probable cause to support Defendant's arrest for possession of marijuana. *See, e.g.*, Smith, 481 F. App'x at 543-44.

### *Miranda Waiver*

In his motion, Defendant also argues that his statements should be suppressed because he was not properly advised of his *Miranda* rights, making his waiver unknowing and involuntary. The Supreme Court has established a two-step inquiry that courts use to consider whether a defendant's waiver of his *Miranda* rights was knowing and voluntary. *See United States v. Barbour*, 70 F.3d 580, 585 (11th Cir. 1995) (citing *Moran v. Burbine*, 475 U.S. 412 (1986)).

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

*Moran*, 475 U.S. at 421.

At the time of the stop, Defendant was 23 years old and had a high school education. Corporal Denbo testified that he read Defendant his *Miranda* rights from an agency issued card. After being read his rights, Defendant acknowledged that he understood his rights and agreed to speak with investigators. This interaction was captured on Corporal Denbo's body camera and was admitted into evidence at the suppression hearing. Corporal Denbo testified that, after being

transported to the district office, Defendant again waived his *Miranda* rights and signed a written document evidencing his waiver. A copy of that waiver was admitted into evidence at the suppression hearing. There was no evidence presented at the hearing to show that Defendant did not understand the *Miranda* warnings, that his statements were coerced, or that Defendant otherwise did not knowingly and voluntarily waive his *Miranda* rights.

After being advised of his *Miranda* rights on two separate occasions, Defendant agreed to participate in a recorded interview during which he made incriminating statements. Because Defendant knowingly and voluntarily waived his *Miranda* rights, these statements are admissible under well-settled principles of law.

## Conclusion

Defendant takes issue with the fact that Corporal Denbo did not utilize his body camera during the majority of his encounter with Defendant, and even when he did, there appear to have been numerous instances where it was activated for a period of time and then turned off. Defendant's arguments in this regard are certainly reasonable and raise credibility concerns. With the advent of modern technology, including mobile phones that can accurately record audio and video for long periods of time, it is increasingly difficult to understand why law enforcement officers are either unwilling or unable to consistently record encounters with the public.[2] Particularly in times such as these in which we now live – when law

---

[2] Corporal Denbo indicated he had issues charging the battery on his body camera on the date in question. He also admitted on cross examination that his failure to fully record his encounter with Defendant was in violation of his Agency's policies.

enforcement officers seem to be under constant suspicion of malfeasance and are routinely accused of wrong-doing – common sense suggests they should record everything they do, if for no other reason than their own protection. Furthermore, from the Court's perspective, body cameras seem to be extremely useful as a practical matter because they frequently reduce, if not eliminate, the need for judges to take lengthy, and sometimes confusing, testimony from witnesses and make difficult credibility determinations. Indeed, had Corporal Denbo recorded his entire encounter with Defendant on his body camera in this case, it is highly unlikely the instant motion would have even been filed in the first place.

Nonetheless, as previously discussed, after very carefully considering the credibility issues in this case, the Court has found Corporal Denbo's testimony to be credible. Although it is certainly the better practice for law enforcement officers to record encounters with the public, there is no legal requirement that they do so. Even though the encounter at issue here was not recorded, for the reasons discussed, the Court finds Corporal Denbo's testimony credible. Consequently, "Defendant's Motion to Suppress Evidence" is **DENIED**.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 21st day of October, 2020.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**